UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| DALE MADDOCKS<br><br>Plaintiff<br><br>v.<br><br>PORTLAND POLICE DEPARTMENT,<br>CHIEF MICHAEL SAUSCHUCK,<br>OFFICER JESSICA BROWN,<br>SERGEANT FRANK HEATH GORHAM,<br>OFFICER HENRY JOHNSON,<br>COUNTY OF CUMBERLAND,<br>CUMBERLAND COUNTY SHERIFF KEVIN JOYCE,<br>CUMBERLAND COUNTY CORRECTIONAL<br>OFFICER ERIK W. MOODY,<br>CUMBERLAND COUNTY CORRECTIONAL<br>OFFICER DEREK J. MCCARTY and<br>UNKNOWN CUMBERLAND COUNTY JAIL<br>SHERIFF'S DEPUTY<br><br>Defendants | Civil Action Docket No. 2:15-cv-00168-JAW |

**DEFENDANTS PORTLAND POLICE DEPARTMENT, CHIEF MICHAEL
SAUSCHUCK, OFFICER JESSICA BROWN, SERGEANT FRANK HEATH GORHAM
AND OFFICER HENRY JOHNSON'S MOTION FOR SUMMARY JUUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

**MOTION**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's Order of July 29, 2016 (Doc. No. 48), Defendants Portland Police Department, Chief Michael Sauschuck, Officer Jessica Brown, Sergeant Frank Heath Gorham and Officer Henry Johnson (collectively the "Portland Defendants"), hereby move for summary judgment as to all of Plaintiff's claims. As set forth below and in the accompanying Portland Defendants' Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment (hereinafter, "PDSMF"),

Portland Defendants contend that there are no genuine issues of fact precluding this Court entering summary judgment in favor of Portland Defendants.

## MEMORANDUM OF LAW

## BACKGROUND

This case arises out of Plaintiff Dale Maddocks ("Plaintiff" or "Maddocks") arrest by Officers Brown, Gorham, and Johnson for carrying a concealed weapon without a permit. At the time of Plaintiff's arrest, it was a crime for a person to wear a handgun under their clothes or to conceal it about their person without a valid concealed weapons permit. *See* 25 M.R.S.A. 2001-A(1)(B) The statute was subsequently amended in 2015 to allow any person who is legally entitled to possess a firearm to carry it concealed. In summary, the undisputed facts are as follows: Officers Brown and Johnson were dispatched in response to a call that a woman, later identified as Bonnie MacGregor, was flailing around on the ground near a busy intersection on Brighton Avenue in Portland. Sergeant Gorham, their patrol supervisor, also responded to the scene. The Portland officers were speaking with an obviously intoxicated Ms. MacGregor on the sidewalk when a male, later identified as Plaintiff, approached them. The Portland officers spoke with Plaintiff for over a minute without being aware that he was carrying a handgun on a belt holster underneath his leather bomber jacket. It was not until Plaintiff moved a certain way that his jacket opened and the end of the gun's barrel protruded below the waistband of his jacket and was seen by Sergeant Gorham. Plaintiff was temporarily detained and it was discovered that he was carrying a Colt Commander handgun in a belt holster, under his jacket

Plaintiff was taken into custody without incident and transported to the Cumberland County Jail ("CCJ"). Plaintiff alleges that he was later assaulted in the jail by CCJ correctional

officers, who are also named as defendants in this case. It is undisputed that none of the individual Portland officers were present when the alleged assault occurred at CCJ.

Plaintiff's claims against Sergeant Gorham and Officers Brown and Johnson include false imprisonment (Count I), assault and battery (Count II), and false arrest and a subsequent excessive use of force in violation of the Maine and Federal Constitutions (Counts III and XI). Plaintiff further alleges supervisory and municipal liability claims against Chief of Police Sauschuck and the Portland Police Department (Counts IV, IX, V and X). Plaintiff has also asserted similar claims against Cumberland County Sheriff Kevin Joyce, Correctional Officers Erik Moody and Derek McCarty, an unknown Cumberland County Sheriff's Deputy, and Cumberland County (collectively, the "County Defendants"). Finally, Plaintiff seeks punitive damages (Count XV) against all defendants.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Fabiano v. Hopkins*, 352 F.3d 447, 452 (1st Cir. 2003). A fact is "material" if it "has the potential to change the outcome of the suit." *Tropigas de Puerto Rico, Inc. v. Certain Underwriters of Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (parallel quotation omitted). An issue is "genuine" if "a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. (parallel quotation omitted).

The facts are viewed in the light most favorable to the non-moving party and the court draws all reasonable inferences in favor of the non-moving party. *Fed. Ins. Co. v. Commerce, Inc. Co.*, 597 F.3d 68, 70 (1st Cir. 2010). However, "[o]nce the moving party has pointed to the

absence of adequate evidence supporting the nonmoving party's case, the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Napier v. Town of Windham*, 187 F.3d 177, 182 (1st Cir. 1999). The non-moving party must present "competent evidence and specific facts to stave off summary judgment." *Tropigas*, 637 F.3d at 56 (internal citations omitted). The non-moving party's "obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001).

## ARGUMENT

### I. THE PORTLAND OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST CLAIMS.

#### A. THE PORTLAND OFFICERS HAD PROBABLE CAUSE AND WERE AUTHORIZED BY STATUTE TO ARREST PLAINTIFF FOR CARRYING A CONCEALED WEAPON

Plaintiff asserts claims against Officers Brown, Gorham, and Johnson for false imprisonment/arrest under common law (Count I), the Maine Civil Rights Act, 5 M.R.S.A. § 4682 (Count III) and 42 U.S.C. § 1983 (Count XI). Because the Maine Civil Rights Act ("MCRA") was patterned after § 1983, the disposition of Plaintiffs' federal law claims controls the outcome of Plaintiffs' claims in Count II under the MCRA. *See Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) (citing *Dimmitt v. Ockenfels*, 220 F.R.D. 116, 123 (D. Me. 2004); *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178-79 (1st Cir. 2008) ("[T]he protections provided by the Maine Civil Rights Act, including immunities, are coextensive with those afforded by 42 U.S.C. § 1983.").

Plaintiff cannot establish liability against Defendants for a Fourth Amendment violation under 42 U.S.C. § 1983 for an unlawful seizure. A Fourth Amendment violation actionable under § 1983 for an unlawful arrest requires a showing that the officers lacked probable cause to

4

make the arrest. *See Correia v. Feeney*, 620 F.3d 9, 12 (1st Cir. 2010); *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 254 (1st Cir. 1996) ("At a bare minimum, if probable cause to arrest . . . existed, no unconstitutional deprivation occurred."). Probable cause to arrest exists where "at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." *Roche*, 81 F.3d at 254 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *Robinson v. Cook*, 706 F.3d 25, 33 (1st Cir. 2013). (finding probable cause "where reasonably trustworthy facts and circumstances would enable a reasonably prudent person to believe that the arrestee has committed a crime.").

There is no dispute that Plaintiff was arrested for the crime of carrying a concealed firearm. At the time of Plaintiff's arrest, it was a crime under Maine law for a person to wear a handgun under their clothes or conceal it about their person without a valid concealed weapons permit. *See* 25 M.R.S.A. 2001-A(1)(B) (2013) ("A person may not, unless excepted by a provision of law . . . Wear under the person's clothes or conceal about the person's person a firearm. . . ."). The statute has since been amended, effective October 15, 2015 to allow any person who is 21 years of age or older and is not otherwise prohibited from carrying a firearm to carry a concealed handgun. 25 M.R.S.A. § 2001-A(2)(A-1) (2015). A violation of 25 M.R.S.A. § 2001-A(1)(B), is a class D crime. 25 M.R.S.A. § 2004(2). Maine law authorizes a police officer to make a warrantless arrest if a person "has committed or is committing in the officer's presence" any Class D crime. 17-A M.R.S.A. § 15(1)(B). Under the statute, this means that the officer must have "personal knowledge of facts that are sufficient to warrant a prudent and

cautious law enforcement officer's belief" that a Class D crime is being or has been committed and that the person arrested has committed or is committing that Class D crime. *Id.* § 15(2).

Here, the undisputed record, including objective surveillance video from the CCJ, shows that Plaintiff was wearing a jacket that extended below his waist on the evening of May 10, 2013. PDSMF ¶ 19. It is also undisputed that Plaintiff was carrying his handgun in a holster secured to the belt he wore around his waist. PDSMF ¶ 11. The undisputed factual record, including the recording from Sgt. Gorham's cruiser, establishes that the Portland officers spoke directly to Plaintiff for more than a minute without being aware that he was carrying a handgun under his jacket. PDSMF ¶ 8. It was not until Plaintiff's jacket parted and a part of the gun's barrel became visible below the jacket's waistband, that the Portland officers became aware that he could be carrying a handgun. PDSMF ¶¶ 8-9. Even at that point, the gun was being worn under Plaintiff's jacket in violation of 25 M.R.S.A. 2001-A(1)(B) (2013). The Portland officers were authorized under Maine law to arrest Plaintiff for committing a Class D crime in their presence by wearing the handgun under his clothing. The Portland Defendants are entitled to summary judgment on the Fourth Amendment and common law false arrest claims because they had probable cause to conclude that Plaintiff was committing a crime under circumstances authorizing a warrantless arrest.

### B. THE PORTLAND OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if the Portland officers' were mistaken in their belief that the manner in which Plaintiff was carrying his handgun violated state law, they are nevertheless entitled to qualified immunity on the false arrest claims. Qualified immunity "shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person

would have known.'" *See Estate of Bennett v. Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008) (emphasis added). A police officer's conduct "violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, for a law to be considered clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

Here, the Maine statute made it a crime to "[w]ear under the person's clothes or conceal about the person's person a firearm." 25 M.R.S.A. § 2001-A(1)(B) (2013). Under the circumstances established by the undisputed facts noted above, Plaintiff was wearing the handgun and holster under his jacket, though he considered that to be "open carry." Even if the officers could see a portion of the gun's barrel, at least at one point in their encounter with Plaintiff when his jacket opened due to his movement, the law was not "clearly established" as to whether the handgun was concealed for purposes of the Maine statute. There are few cases interpreting the Maine concealed carry law in this context. One Maine case recognizes generally that courts interpreting similar laws "hold, apparently universally, that the word 'concealed' does not mean absolute invisibility." *State v. Gwinn*, 390 A.2d 479, 482 (Me. 1978). Based on *Gwinn*, it cannot be said that *no* reasonable officer confronted with the same circumstances would not have made the same choice. *See Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)) (recognizing that qualified immunity leaves "ample room for mistaken judgments."). To the extent the law was ill-defined at the time Plaintiff was arrested, it would not have been apparent to a reasonable police officer in the position of the Portland Defendants that he/she was violating Plaintiff's constitutional rights by arresting

7

Plaintiff for carrying a concealed weapon. If the arrest did not violate clearly established law, then the Portland officers are entitled to qualified immunity. *See Roy v. Inhabitants of City of Lewiston*, 42 F.3d 691, 695-96 (1st Cir. 1994).

## II. THE PORTLAND OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S "SUBSEQUENT" ASSAULT/BATTERY AND EXCESSIVE FORCE CLAIMS

Plaintiff also asserts claims for a "subsequent" assault/battery and excessive force under common law (Count II), the Maine Civil Rights Act, 5 M.R.S.A. § 4682 (Count III) and 42 U.S.C. § 1983 (Count XI). As noted above, the disposition of Plaintiffs' federal law claims controls the outcome of Plaintiffs' claims under the MCRA. Here, it is undisputed that the Portland officers did not witness, nor participate in, the alleged assault and battery of Plaintiff at CCJ. *See* PDSMF ¶¶ 23-27. Plaintiff does not claim that the Portland Officers directly used any physical or excessive force against him. PDSMF ¶ 14. Rather, Plaintiff's assault, battery, and excessive force claims against the Portland officers are based solely on the alleged actions of the CCJ correctional officers. Of course, there are circumstances when a police officer may be held liable for the failure to prevent an alleged use of excessive force by another officer, even if he or she does not personally use any force. *See Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir.1990). However, this is not such a case. Plaintiff cannot make out the elements of a so-called "bystander" claim against the Portland officers. For liability to attach under a bystander theory, the defendant officer must have (1) been present at the scene; (2) seen the use of alleged excessive force; (3) had a realistic opportunity to prevent the alleged use of force; and (4) had sufficient time to prevent the alleged use of force. *Id.* No liability can attach for failing to intercede if the officer has no "realistic opportunity" to prevent an alleged unconstitutional use of force. *Id*.

As a preliminary matter, Portland Defendants do not concede that there was an unconstitutional use of force by the CCJ correctional officers. However, even if the Court finds that there is a dispute of fact bearing on whether the CCJ correctional officers' use of force was constitutional, any claims against the Portland Defendants resulting from that use of force must fail as a matter of law. The Portland Defendants were not present at the jail when the use of force by corrections officers allegedly occurred, and therefore they did not witness, or have a realistic opportunity to prevent, any alleged use of force at the jail by others. *See* PDSMF ¶¶ 23-27.

The undisputed factual record, including the CCJ surveillance video of the booking area, establishes that Officer Johnson transported Plaintiff to CCJ and, upon arrival, Plaintiff had no visible injuries. PDSMF ¶ 24. The surveillance video shows that once Officer Johnson completed the intake paperwork Plaintiff was transferred into the custody of corrections officers and Officer Johnson left the jail. PDSMF ¶¶ 23-25. It is also undisputed that after Plaintiff's arrest, Officer Brown and Sgt. Gorham remained preoccupied with Ms. MacGregor. PDSMF ¶ 27. Neither Sgt. Gorham nor Officer Brown was involved with the booking of Plaintiff, nor were either present at CCJ during any period of time when Plaintiff interacted with the CCJ Officers, including when he was allegedly assaulted. PDSMF ¶ 26.

Plaintiff does not claim that his handcuffing by Portland officers constituted assault, battery or the use of excessive force against him. Plaintiff has made it clear that these claims arose at CCJ subsequent to his arrest. Although not alleged, to the extent Plaintiff now contends that the Portland officers used excessive force during handcuffing, the Portland Defendants contend that Plaintiff has waived all claims based on this theory. *See, e.g. Calvi v. Rockland*, 470

F.3d 422, 430 (1st Cir. 2006) (finding bystander claims waived where plaintiff "never articulated, or even vaguely insinuated" such claims in the complaint).

Alternatively, even if the Court does not find that Plaintiff waived a claim for excessive force during handcuffing, this minimal physical contact during routine handcuffing "affords no legally sufficient basis for a finding" that Officer Brown's handcuffing "represented a constitutionally proscribed use of excessive force." *Calvi*, 470 F.3d at 428 ("Standard police practice called for cuffing an arrestee's hands behind her back and [the officer's] decision not to deviate from this practice was a judgment call, pure and simple."). *See also Fernandez-Salicrup v. Figueroa-Sancha*, 790 F.3d 312, 326-27 (1st Cir. 2015) (finding no Fourth Amendment violation when officer shoved an arrestee, a minor student, face-first against wall and pulled her arm, injuring her in the process). Accordingly, the Portland officers are entitled to summary judgment on Plaintiff's excessive force claims.

### III. THE PORTLAND OFFICERS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW TORT CLAIMS BECAUSE THEY ARE IMMUNE UNDER THE MAINE TORT CLAIMS ACT.

As noted, Plaintiff alleges state law torts claims of false imprisonment, assault and battery against Sergeant Gorham and Officers Brown and Johnson. For the reasons discussed fully above, these claims must fail as a matter of law. Moreover, with respect to Plaintiff's state law torts, the immunity provisions of the Maine Tort Claims Act ("MTCA"), applies to each of these claims. *See* 14 M.R.S.A. §§ 8101 *et seq*.

Under the MTCA, employees are entitled to personal immunity from civil liability for "performing or failing to perform any discretionary function or duty . . . ." 14 M.R.S.A. §8111(1)(C). This is true "whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary

function or duty is performed is valid." *Id.* This immunity arose "in recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits." *Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 425 (Me. 1987) (quoting Restatement (Second) of Torts § 895D cmt. b (1979)). In essence, "[t]ort liability should not be imposed for conduct of a type for which the imposition of liability would substantially impair the effective performance of a discretionary function." *Id.*

In determining whether a governmental action constitutes a discretionary function, Maine courts look to four factors:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* at 426; *Tolliver v. Dep't of Transp.*, 2008 ME 83, ¶ 19, 948 A.2d 1223, 1230. The first, second, and fourth factors are used to determine whether an employee is "performing an official function or duty" or in other words, whether the action performed by the employee was within the employee's duties. *Morgan v. Kooistra*, 2008 ME 26, ¶ 20, 941 A.2d 447, 454 (internal quotations omitted). Discretionary immunity will apply unless the employee's conduct "clearly exceeded, as a matter of law, the scope of any discretion [they] could have possessed in [their] official capacity...." *Lyons v. City of Lewiston*, 666 A.2d 95, 101 (Me. 1995).

Using these factors, Maine courts have regularly held that governmental employees are entitled to discretionary function immunity where the "alleged negligent acts involved discretionary decisions that were integral to the accomplishment of a uniquely governmental

11

policy or program." *Tolliver*, 2008 ME at ¶ 20. This would include actions taken by governmental employees in response to an emergency because those actions serve "the basic governmental objective of public safety." *Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928, 931 Courts have construed § 8111(1)(C) to apply to claims of excessive force and other actions taken by law enforcement officers. *See Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994) (citing *Leach v. Betters*, 599 A.2d 424, 426 (Me. 1991); *Norton v. Hall*, 2003 ME 118, ¶ 9, 834 A.2d 928, 931. *See also Ducette v. City of Lewiston*, 1997 ME 157, ¶ 6, 679 A.2d 1292, 1294 (holding that an emergency dispatcher who failed to follow department guidelines related to incoming calls was still entitled to discretionary-function immunity because her job required her to "exercise judgment in evaluating incoming calls and determining initially how those calls should be handled.").

   Here, there can be no doubt that the actions of Sergeant Gorham and Officers Brown and Johnsons while responding to the call regarding Mrs. MacGregor and ultimately arresting Plaintiff were discretionary, and thus entitled to absolute immunity. It is undisputed that the Portland officers all had the legal status of a municipal employee under the MTCA. 14 M.R.S.A § 8102(1). In addition, the Portland officers' actions were taken in furtherance of a basic governmental program, the municipality's law enforcement services, and, just as in *Norton*, they served the uniquely governmental objective of public safety. *Norton*, 2003 ME at ¶ 7. At all times relevant to this claim, the Portland officers were performing their official duties as police officers for the City of Portland. They responded to a call of a hysterical woman, who was visibly upset and crying. When Mr. Maddocks arrived suddenly arrived on the scene, claiming to be her boyfriend, it was unclear whether there had been a domestic dispute between Mr. Maddocks and Ms. MacGregor. As the officers investigated the situation, Mr. Maddocks' jacket

opened, exposing the end of what appeared to be the barrel of a handgun. The officers had been speaking to Mr. Maddocks for over a minute without realizing he was armed, because his jacket concealed the handgun in its belt holster. The officers, dealing with a hysterical woman and a possible domestic dispute, needed to protect not only Mrs. MacGregor but themselves, and therefore secured the gun and ultimately arrested Plaintiff for carrying a concealed weapon without a permit. The decisions the officers made in handling the situation and arresting Plaintiff required the exercise of their judgment, based on their extensive experience and training as police officers. The MTCA and Law Court precedent have consistently protected government employees and agents with immunity for such decisions.

The MTCA also confers absolute immunity on governmental employees for intentional acts or omissions that arise in the course and scope of their employment. 14 M.R.S.A. § 8111(1)(E). The only exception to the grant of immunity under Section 8111(1)(E) is for intentional acts performed in "bad faith." *Id.* It is undisputed that the Portland officers acted intentionally in arresting Plaintiff. The "bad faith" proviso of Section 8111(1)(E) is not implicated by the facts of this case. *See Trafton v. Devlin*, 43 F. Supp. 2d 56, 62 (D. Me. 1999) (finding bad faith where wardens took pleasure in fact that plaintiffs were forced to spend money on their criminal defense and wardens had failed to provide exculpatory evidence to prosecutors). Here, there is no evidence of bad faith in the record. The Portland officers acted using split second judgment and in the reasonable belief that Plaintiff was carrying a concealed weapon in violation of Maine law. Therefore, the Portland officers are entitled to the immunity afforded by the MTCA for their actions in arresting Plaintiff, whether alleged to be negligent or intentional. *See* 14 M.R.S.A. § 8111(1)(C) & (E).

    **IV.**    **CHIEF SAUSCHUCK AND THE PORTLAND POLICE DEPARTMENT ARE ENTITLED TO SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS.**

As a preliminary matter, Plaintiff has named the Portland Police Department as a defendant. The Portland Police Department is simply a department of the City of Portland, however, and is not a separate political entity that has the capacity to sue and be sued. *See, e.g., Norton v. City of South Portland*, 831 F Supp. 2d 340, 360 n.14 (Me. 2011) (construing claims against the police department as claims against the city). The City of Portland is the only proper entity Defendant for purposes of the municipal liability claims. Moreover, the claims against Chief Sauschuck should also be read as claims against the City since there is no allegation that Chief Sauschuck was personally involved with the incident. The claims against him are in his official capacity as police chief and as a final policymaker, based on a failure to train and for implementing an unconstitutional policy or practice. Therefore, the claims against the Portland Police Department and Chief Sauschuck are, in actuality, both claims against the City and governed by the same "deliberate indifference" standard of liability.

### A. THERE WAS NO UNDERLYING CONSTITUTIONAL VIOLATION BY THE PORTLAND OFFICERS.

In order to establish liability against Chief Sauschuck, the Portland Police Department and/or the City of Portland (collectively, the "City"), Plaintiff would need to prove the commission of an underlying constitutional violation by the Defendants Brown, Gorham and/or Johnson. For the reasons discussed fully above, there was no underlying constitutional violation by the Portland officers. Since no Portland officer inflicted a constitutional injury on Plaintiff, the municipal liability claims against the City must fail as a matter of law. *See Calvi*, 470 F.3d at 429; *Estate of Bennett*, 548 F.3d at 177 ("The establishment of § 1983 liability against either [the Town] or the County would ultimately depend on plaintiff proving the commission of an underlying constitutional violation by the subordinate officers.").

B. PLAINTIFF CANNOT MEET THE STANDARD FOR MUNICIPAL LIABILITY.

Even if there is a question of fact as to whether there was an underlying constitutional violation by the Portland officers, Plaintiff cannot, as a matter of law, meet the standard for municipal liability. Governmental entities can be held liable under Section 1983 for constitutional violations committed pursuant to an unconstitutional custom, policy or practice, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978), but such liability exists "only where [the entity] *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). "This requires that the plaintiff demonstrate both the existence of a policy or custom and a causal link between that policy and the constitutional harm." *Santiago v. Fenton*, 891 F.2d 373, 381 (1st Cir. 1989). *See also Estate of Bennett*, 548 F.3d at 177 ("Municipalities can be held liable only if municipal employees commit unconstitutional acts and those actions are shown to have been caused by a 'policy or custom' of the government.").

Here, Plaintiff alleges that the City has a policy or custom of arresting individuals who are openly carrying firearms. Amended Complaint ¶¶ 59, 86. However, there is no evidence in the record supporting that claim. Plaintiff's conclusory allegations and speculation, unsupported by the factual record, are insufficient to survive a motion for summary judgment. *See Estate of Bennett*, 548 F.3d at 177-78. With respect to Plaintiffs' failure to train claim in Counts IV and IX, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality]." *City of Canton*, 489 U.S. at 390. A "failure to train" may only serve as a basis for liability where the conduct "'amounts to *deliberate*

*indifference* to the rights of the persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury.'" *Norton*, 831 F. Supp. 2d at 365 (citing *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998)). The standard of fault for deliberate indifference is stringent and requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). To establish municipal liability based on a failure to train, it is not sufficient "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." *City of Canton*, 489 U.S. at 391. A plaintiff must also prove that the deficiency in training actually caused the police officers' indifference to constitutional rights. *Id.* at 391-92 (A failure to train under § 1983 "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants.").

The undisputed evidence in the factual record accompanying this Motion refutes any claims that Plaintiffs can meet the stringent standard of "deliberate indifference" to "obvious" deficiencies in training to support a municipal liability claim. When asked at his deposition to identify the basis of his failure to train claim, Plaintiff testified that the mere fact that he had been arrested in this specific incident necessarily proves that the City of Portland does not adequately train its officers. PDSMF ¶ 31. Clearly, that is not a cognizable basis for a municipal liability claim based on failure to train, under *Canton* and its progeny. *See, e.g. Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.") (citations omitted). The training afforded to Portland police officers is comprehensive and ongoing and consistent with Maine law governing police officer training. PDMSF ¶ 28.

16

Plaintiff has not produced a scintilla of evidence demonstrating that Portland or Chief Sauschuck acted with deliberate indifference with regard to the training of its officers regarding arrest and the lawful use of force. *See Calvi*, 470 F.3d at 429. The only record evidence is to the contrary; all Portland police officers must attend the Maine Criminal Justice Academy where they receive mandatory training, including training on lawful arrests and the lawful use of force. PDSMF ¶¶ 28. Furthermore, Portland police officers received additional and extensive training on the Portland Police Department policies and procedures, on those topics.   PDSMF ¶ 28-30.

A supervisor can be liable if he formulates a policy or engages in a practice that directly leads to a subordinate's violation of the Constitution. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994). But "[i]t is well settled, however, that "supervisory liability under § 1983 cannot be predicated on a respondeat [superior] theory, but only on the basis of the supervisor's own acts or omissions." *Buchanan v. State of Maine*, 417 F. Supp. 2d 45, 69 (D. Me. 2006), quoting *Aponte Matos v. Toledo Davila*, 135 F. 3d 182, 192 (1st Cir. 1988). Courts also require that the supervisor be "either a primary actor, involved in, or a prime mover behind, the underlying violation." *Buchanan* at 69, quoting *Camilo-Robles v. Zapata*, 175 F.3d 41, 43-44 (1st Cir. 1999). There must also be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" between the supervisor's acts or omissions and the underlying violation by the subordinate. *Id*., quoting *Camilo-Robles* at 44. Stated otherwise, the supervisor's own conduct must lead "inexorably" to the underlying constitutional violation. *Hegarty v. Somerset County*, 53 F.3d 1367, 1380 (1st Cir 1995). The Supreme Court decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) held that, given the unavailability of a master's vicarious liability for the acts of a subordinate agent in § 1983 actions, each supervising government official is only liable for his own misconduct. Because the

supervisor is held only to account for his own conduct, Plaintiff must prove the same intentional conduct that violates the Constitution that is required of the subordinate actor. "In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, *purpose* rather than knowledge is required to impose [Bivens or § 1983] liability on the subordinate for unconstitutional [acts]; the same holds true for an official charged with violations resulting from his or her superintendent responsibilities." *Id*. at 1949 (emphasis added).  As demonstrated by the undisputed factual record, Plaintiff cannot support a finding of "deliberate indifference" on the part of the City of Portland or Chief Sauschuck or a finding of intentional conduct that violates the Constitution by Chief Sauschuck as a supervisor.  Accordingly, the Portland Defendants are entitled to summary judgment as to any municipal or supervisory liability claim.

> **V.**     **THERE IS NO EVIDENCE THAT WOULD SUPPORT AN AWARD OF PUNITIVE DAMAGES AND THE CITY IS IMMUNE FROM PUNITIVE DAMAGES AS A MATTER OF LAW.**

The Portland Defendants are entitled to summary judgment on Plaintiff's punitive damages claims (Count XV) because, as discussed above, there was no constitutional violation by individual Defendants and/or they are entitled to qualified immunity.  Even if the underlying constitutional claims survive summary judgment, Portland Defendants are still entitled to summary judgment on Plaintiff's punitive damages claim.  Punitive damages in a § 1983 civil rights action can be granted "only if 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Concepcion Chaparro v. Ruiz-Hernandez*, 607 F.3d 261, 268 (1st Cir. 2010) (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)).   The Plaintiff has produced no evidence that Portland Defendants acted "in the face of a perceived risk that [their] actions [would] violate federal law." *Cabral v. U.S. Dep't of Justice*, 587 F.3d 13, 24-25 (1st Cir. 2009) (citations omitted).

Moreover, the City is entitled to summary judgment on Plaintiff's punitive damages claim because a municipality is immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). *See also Chestnut v. City of Lowell*, 305 F.3d 18, 21 (1st Cir. 2002) ("Punitive damages are, in this sense, a windfall—and one that here would come at the expense of innocent taxpayers of the City, the very ones for whose benefit *City of Newport* adopted the rule giving municipalities such an immunity."). Therefore, the Portland Defendants are entitled to summary judgment on the punitive damages claims in Count XV.

## **CONCLUSION**

For the foregoing reasons, Defendants Portland Police Department, Chief Michael Sauschuck, Officer Jessica Brown, Sergeant Frank Heath Gorham and Officer Henry Johnson request the Court enter summary judgment in their favor on all counts against them.

Dated at Portland, Maine this 12th day of October, 2016.

                                                              /s/ Kasia S. Park
                                                              Edward R. Benjamin, Jr.
                                                              Kasia S. Park
                                                              Attorneys for Portland Defendants

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
ebenjamin@dwmlaw.com
kpark@dwmlaw.com

## **CERTIFICATE OF SERVICE**

I, Kasia S. Park, attorney for Portland Defendants, hereby certify that on October 12, 2016, I electronically filed Portland Defendants' Motion for Summary Judgment with the Clerk of Court using the CM/ECF system ECF system which will send notification of such filings(s) to all parties of record. I further certify that copies of the above documents have been provided to Plaintiff via U.S. mail, postage prepaid, at the following address:

> Dale Maddocks
> 12 Broadway Street
> Eastport, ME 04631

Dated: October 12, 2016

>                                      */s/ Kasia S. Park*
>                                      Kasia S. Park
>                                      Attorney for Portland Defendants

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, ME  04101
(207) 772-1941
kpark@dwmlaw.com