UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| DALE MADDOCKS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:15-cv-00168-JAW |
| | ) | |
| PORTLAND POLICE DEPARTMENT, | ) | |
| et al., | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON PORTLAND DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff Dale Maddocks alleges Defendants, including Defendants Portland Police Department and certain of its command staff and officers ("Portland Defendants"), violated his constitutional rights in connection with an arrest and detention in May 2013.

The matter is before the Court on the motion for summary judgment of the Portland Defendants. (Motion for Summary Judgment, ECF No. 50.) Through the motion, the Portland Defendants seek summary judgment on all of the claims (counts I, II, III, IV, V, IX, X, XI, and XV of the amended complaint) asserted against them.

Following a review of the summary judgment record, I recommend the Court grant the motion for summary judgment.

**SUMMARY JUDGMENT RECORD**

At summary judgment, the Court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to

evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party seeking summary judgment thus must file a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b), (f).

A party seeking to oppose a properly filed and supported motion for summary judgment must file an opposing statement of material facts that admits, denies, or qualifies the factual statements made by the moving party. D. Me. Loc. R. 56(c). Unless a statement is admitted, the opposing party must provide a citation to evidence of record that supports the opposing statement. *Id.* If a party fails to do so, the moving party's factual statements "shall be deemed admitted." D. Me. Loc. R. 56(f). Moreover, pursuant to Local Rule 7(b), parties are expected to file an objection to a motion if they contest the motion, and unless they do so are "deemed to have waived objection."

A court, however, "may not automatically grant a motion for summary judgment simply because the opposing party failed to comply with a local rule requiring a response within a certain number of days." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7-8 (1st Cir. 2002). Instead, courts must assess whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In this case, the summary judgment record consists of the Local Rule 56 record filed by the Portland Defendants. Plaintiff's First Amended Complaint (Complaint, ECF No. 19) is unsworn and Plaintiff did not file an opposing statement of material facts or any record material.

### BACKGROUND FACTS

In his amended complaint, Plaintiff alleges that members of the Portland, Maine, police force falsely arrested him on May 8, 2013. (Complaint ¶¶ 10 –15, 91 – 92.)[1] Plaintiff further asserts that following his arrest, certain county employees used excessive force against him and subjected him to unconstitutional conditions of confinement during his overnight detention at the Cumberland County Jail. (*Id.* ¶¶ 16 – 23.)

Plaintiff also maintains the Portland Police Chief (Defendant Michael Sauschuck), who is responsible for establishing the policies and procedures for the training of Portland police officers, inadequately trained, supervised and/or disciplined on the issue of probable cause with respect to a person's right to carry a firearm and thus Plaintiff's claims are in part based on an unconstitutional policy, custom, or practice of the City of Portland. (*Id.* ¶¶ 52 – 54, 58 – 59, 79 – 81.) Plaintiff asserts his claims pursuant to 42 U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682.

The uncontroverted record evidence establishes the following:

---

[1] This recommended decision will reference the amended complaint as the complaint.

1. On the evening of May 8, 2013, Portland Police Officers Brown and Johnson, and Sergeant Gorham, responded to a report that a female was on the ground, screaming, and throwing items into traffic.

2. Upon arrival at the scene, Sgt. Gorham and Officers Brown and Johnson found the woman sitting on the sidewalk with no shoes on, visibly upset.

3. The woman appeared to be intoxicated, as she slurred her words and kept repeating that she was from Ellsworth and wanted to go home to Ellsworth.

4. The Portland officers decided that they needed to bring the woman to a safe location for the evening and she accepted their offer to transport her to a shelter.

5. As Officer Brown was about to provide a ride to the shelter, a male, later identified as Plaintiff, suddenly approached Sgt. Gorham and Officers Brown and Johnson.[2]

6. Plaintiff stated that the woman was his girlfriend and that he would take care of her.

7. After speaking with the Portland officers for over a minute, Plaintiff moved in a way that caused his leather bomber jacket to move up slightly and expose the bottom inch or two of what appeared to Sgt. Gorham to be the barrel of a handgun.

8. As Sgt. Gorham looked closer, he could see a large bulge under Plaintiff's jacket at waist level and, believing that Plaintiff may be concealing a firearm under his jacket, asked him what was on his hip.

---

[2] Portland Police cruisers are equipped with a Watch Guard audio/video recording system. The system captured audio and video of portions of the officers' interaction with the woman and Plaintiff Dale Maddocks.

4

9. When Plaintiff responded to Sgt. Gorham that it was a Colt Commander, Sgt. Gorham took hold of Plaintiff's arm to keep it away from his hip and moved Plaintiff's jacket back to expose a handgun in a holster.[3]

10. Sgt. Gorham removed the handgun from the holster and, as Plaintiff became angry and uncooperative, Officer Brown handcuffed Plaintiff and searched him for additional weapons.

11. Sgt. Gorham and Officer Johnson did not observe anything in the way Plaintiff was handcuffed that conflicted with the procedure taught at the Maine Criminal Justice Academy, that was unnecessarily forceful, or that represented anything but a routine handcuffing.

12. Other than in the course of handcuffing Plaintiff, the Portland officers did not use any physical force against Plaintiff.

13. Officer Brown located two loaded magazines that contained hollow point ammunition in Plaintiff's left rear pocket of his pants and a folding knife in a small case on his left hip.

14. Plaintiff became combative and more uncooperative. He insisted that his firearm was not concealed, that the officers should take him to jail, and that he would sue the officers.

15. Plaintiff did not claim he had a concealed handgun permit, never tried to produce a permit, and no permit was found on his person by the Portland officers.

---

[3] A photograph depicting Plaintiff wearing the holster (but not the jacket) that he was wearing the night of his arrest is attached to the summary judgment statement of material facts as Exhibit 5.

16. The Portland officers detected the strong odor of alcohol coming from Plaintiff. When Sgt. Gorham asked Plaintiff if he had been drinking, Plaintiff stated he had consumed four scotches during the previous hour or so, but was not drunk.

17. Because Plaintiff was carrying the firearm in a belt holster that allowed it to be concealed under his bomber jacket without a permit to do so, he was arrested for carrying a concealed weapon without a permit.

18. Plaintiff was placed in the back of Officer Johnson's cruiser and Officer Johnson transported Plaintiff to Cumberland County Jail for processing.

19. Plaintiff never complained about the handcuffs being too tight or the manner in which he was handcuffed while being transported to jail.

20. Upon arrival at the jail, Officer Johnson parked his cruiser in the sally port and assisted Plaintiff in exiting the cruiser and walking into the jail.

21. Inside the jail, Officer Johnson completed the necessary arrest paperwork and transferred custody of Plaintiff to a corrections officer.

22. At the time Officer Johnson transferred custody of Plaintiff to the corrections officer, Plaintiff had no visible injuries and had not complained of any injuries.

23. The only interaction between Plaintiff and corrections officers witnessed by Officer Johnson was when Officer Johnson transferred custody of Plaintiff without incident to a corrections officer before he left to resume his patrol duties.

24. Officer Brown and Sgt. Gorham were not present when Plaintiff was processed at the jail and they did not observe any interaction between Plaintiff and corrections officers.

25. Officer Brown and Sgt. Gorham had no further interaction with Plaintiff after he was arrested.

26. Portland police officers, including Sgt. Gorham and Officers Brown and Johnson, initially receive training at the Maine Criminal Justice Academy on lawful arrests, Maine law, and the lawful use of force in connection with arrests.

27. As of May 10, 2013, the Portland Police Department had a comprehensive set of standard operating procedures to serve as a guideline for its officers involved in incidents such as the events involving Plaintiff, including polices on law enforcement authority and arrests, and searches and seizures.

28. Sgt. Gorham and Officers Brown and Johnson all received training at the Criminal Justice Academy and by the Portland Police Department regarding lawful arrest procedures, Maine law, and the lawful use of force, as well as other topics relevant to their work as Portland Police officers prior to May 10, 2013.

29. Portland police patrol officers are directly supervised by their Sergeants and Lieutenants, and additional oversight regarding the use of force is provided by the Chief of Police, a use of force committee, and an internal affairs unit.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact

reasonably could find in his favor.'"  *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor.  *Perry v. Roy,* 782 F.3d 73, 77 (1st Cir. 2015).  If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied to the extent there are supported claims.  *Id.* at 77 – 78 ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks and alteration omitted).  Unsupported claims are properly dismissed.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 – 24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . .").

## DISCUSSION

Defendants contend summary judgment is warranted because (1) the record does not support a finding that Defendants lacked probable cause to arrest Plaintiff for carrying a concealed weapon without a permit; (2) a reasonable officer on the scene would not have believed an arrest under the circumstances violated clearly established constitutional law; (3) the record does not support a finding that Defendants were involved in the alleged incidents at the county jail; and (4) the record does not support a supervisory liability claim.

Because Plaintiff asserts his claims pursuant to 42 U.S.C. § 1983 and the Maine Civil Rights Act, 5 M.R.S. § 4682, the same analysis governs the assessment of Plaintiff's

8

claims under both statutes. *See Cady v. Walsh*, 753 F.3d 348, 356 n.6 (1st Cir. 2014) (citing *Berube v. Conley*, 506 F.3d 79, 85 (1st Cir. 2007) ("The disposition of a 42 U.S.C. § 1983 claim also controls a claim under the MCRA.")).

## A.  False Arrest (Count I) [4]

Plaintiff alleges that Defendants Brown, Gorham, and Johnson lacked probable cause to arrest him on any criminal charge. The Fourth Amendment to the United States Constitution and Article 1, Section 5 of the Maine Constitution proscribe unreasonable seizures. A warrantless arrest is reasonable "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). "Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *United States v. Vongkaysone,* 434 F.3d 68, 73 (1st Cir. 2006). *See also State v. Enggass,* 571 A.2d 823, 825 (Me.1990) (expressing the same standard). The existence of probable cause is determined by the totality of the circumstances and focuses on what the officer knew at the time of arrest. *Vongkaysone,* 434 F.3d at 73. The evaluation of what an officer might reasonably have understood turns on "common sense" and "practical considerations," not overly technical analyses. *Id.* (quoting *United States v. Meade,* 110 F.3d 190, 198 n. 11 (1st Cir. 1997)). The inquiry is objective, and focuses on whether a reasonable officer with the same information known to the officer would have understood that probable cause

---

[4] Plaintiff labels count I "false imprisonment."

existed to make an arrest. *Hunter v. Bryant,* 502 U.S. 224, 228 (1991); *Enggass,* 571 A.2d at 825.

Defendants' argue that the officers' arrest of Plaintiff was reasonable based on Plaintiff's possession of a concealed weapon without a permit. In support of their argument, Defendants cite 25 M.R.S. § 2001-A, which provides in pertinent part:

> **§ 2001-A. Threatening display of or carrying concealed weapon**
>
> **1. Display or carrying prohibited.** A person may not, unless excepted by a provision of law:
>     …
>
>     **B.** Wear under the person's clothes or conceal about the person's person a firearm, slungshot, knuckles, bowie knife, dirk, stiletto or other dangerous or deadly weapon usually employed in the attack on or defense of a person.

25 M.R.S. § 2001-A(1)(B). Section 2001-A lists certain exceptions to the prohibition on carrying concealed weapons, including an exception for persons with a permit to carry a concealed weapon. *Id.* § 2001-A(2)(A).[5] Violation of section 2001-A is a class D crime. *Id.* § 2004(2). Maine law authorizes a law enforcement officer to make a warrantless arrest of a person who commits a Class D crime in the officer's presence. 17-A M.R.S. § 15(1)(B).

The summary judgment record establishes that at the time of his encounter with the officers, Plaintiff was carrying a firearm in a belt holster on his hip and that the firearm

---

[5] In 2015, the Legislature amended the statute to add a much broader exception to the prohibition on carrying concealed weapons by excepting from the law handguns carried by a person over the age of 21 and by service members over the age of 18, provided the person is not otherwise prohibited from carrying a firearm. 25 M.R.S. § 2001-A(2)(A-1) (2015). At the time of Plaintiff's arrest, the broader exception did not exist.

was covered by a bomber jacket and thus the firearm was not apparent to the officers. Based on the circumstances presented to and the information known to officers, the officers had probable cause to find that Plaintiff was committing a Class D crime in their presence. The officers, therefore, had probable cause to arrest Plaintiff.[6]

Even if the factual record did not unequivocally establish that the officers had probable cause to arrest Plaintiff, Defendants are nevertheless entitled to summary judgment based on the doctrine of qualified immunity. Qualified immunity protects state actors sued in their personal capacity based on a decision that, "even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz,* 533 U.S. 194, 206 (2001)). "This strain of immunity aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey,* 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir. 1992)).

Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi,* 773 F.3d 361, 367 (1st Cir. 2014). Defendants' qualified immunity

---

[6] In his complaint, Plaintiff alleges that he was charged with carrying a concealed firearm and that the Maine judge who presided at the criminal prosecution dismissed the criminal case at the close of the evidence on motion for directed verdict. (Compl. ¶¶ 28 – 29.) Plaintiff, however, has not introduced any evidence regarding the decision. Accordingly, the decision and the bases for the decision are not part of the summary judgment record.

11

defense requires a court to assess: (1) "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation" and (2) "whether the violated right was clearly established at the time that the offending conduct occurred." *Ford v. Bender,* 768 F.3d 15, 23 (1st Cir. 2014). When a court considers whether the constitutional right was clearly established at the time, the court must determine (a) "whether the contours of the right, in general, were sufficiently clear," and (b) "whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id.*

The qualified immunity analysis must include a consideration of the particularized facts of the case, not broad general propositions. *Hunt,* 773 F.3d at 368. "To be clearly established, the contours of this right must have been 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2023 (2014)). "In other words, 'existing precedent must have placed the ... constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S.Ct. 2074, 2083 (2011)).

As recently as April 15, 2015, the First Circuit Court of Appeals rejected the proposition that the Second Amendment provides Americans an unqualified right to carry a concealed firearm. *Powell v. Tompkins*, 783 F.3d 332, 348 (1st Cir. 2015), *cert. denied,* 136 S. Ct. 1448 (2016) (discussing, inter alia, *District of Columbia v. Heller,* 554 U.S. 570 (2008), and quoting with approval *Hightower v. City of Boston*, 693 F.3d 61, 73 – 74 (1st Cir. 2012), for the proposition that "[l]icensing of the carrying of concealed weapons is presumptively lawful").

Given the facts as established by the summary judgment record, under the circumstances, a reasonable officer in the position of the arresting officers would not have understood that the arrest of Plaintiff violated clearly established law. Accordingly, even if the record did not establish that as a matter of law the arresting officers had probable cause to arrest Plaintiff, the officers are entitled to summary judgment based on qualified immunity.

**B.     Excessive Force (Counts I and II)**

In Count I, Plaintiff also alleges that the officers used excessive force, causing "severe and painful injury." (Compl. ¶ 40.) In addition, in Count II, Plaintiff asserts Defendants' actions constitute assault and battery under Maine law. (*Id.* ¶ 43.)

To the extent Plaintiff claims that the officers used excessive force at the Cumberland County Jail, Plaintiff has failed to present any evidence that the officers applied, or observed without intervening as others applied, excessive force to Plaintiff while Plaintiff was detained at the Cumberland County Jail.

The record is similarly lacking on Plaintiff's claim of excessive force in connection with his arrest. The only evidence of record establishes that the force used in connection with the arrest and handcuffing of Plaintiff was reasonable. Furthermore, no reasonable officer in the officers' position would have understood the manner in which they handcuffed Plaintiff violated a clearly established constitutional right, which fact establishes that the officers are immune from liability. *Hunt v. Massi*, 773 F.3d 361, 368 – 69 (1st Cir. 2014) (considering whether handcuffing an arrestee behind the back can give rise to an excessive force claim where the arrestee reports a physical condition that would

13

make the application of handcuffs harmful); *Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006) (holding that application of handcuffs behind arrestee's back was a reasonable application of force in accord with standard police practice). The officers, therefore, would also be entitled to summary judgment based on qualified immunity.

C.    **Assault and Battery**

The officers are also entitled to summary judgment on Plaintiff's state law claim of assault and battery. Law enforcement officers are immune under state law from liability where the conduct giving rise to the claim involves the performance of a discretionary function. 14 M.R.S. § 8111(1)(C). Because the record lacks any evidence to support Plaintiff's excessive force claim, the officers' use of handcuffs was within their discretion and is not actionable. *Richards v. Town of Eliot*, 2001 ME 132, ¶ 32, 780 A.2d 281, 292 ("Officers whose actions are objectively reasonable in light of the facts and circumstances confronting them are not acting beyond the scope of their discretion and are immune under the Maine Tort Claims Act." (quotation marks and citation omitted)); *cf. Calvi*, 470 F.3d at 428 ("decision not to deviate" from practice of handcuffing arrestees behind the back "was a judgment call, pure and simple").

D.    **Supervisory/Municipal Liability**

Plaintiff alleges that Defendant Sauschuck and the Portland Police Department (i.e., the City of Portland)[7] share liability with the arresting officers based on a failure to train

---

[7] "[M]unicipalities and other local governmental bodies are "persons" within the meaning of [42 U.S.C. § 1983]." *See Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). However, Defendants correctly observe that the Portland Police Department is not an entity, but rather an arm of the City of Portland. *Cronin v. Town of Amesbury,* 895 F. Supp. 375, 383 (D. Mass. 1995), *aff'd,* 81 F.3d 257 (1st

and the existence of a municipal policy, custom, or practice that produced the alleged violations.

   1.   *Supervisor conduct*

Supervisory officials are legally responsible for constitutional violations committed by a subordinate if the subordinate's behavior resulted in a constitutional violation, and the supervisor's own action or inaction can be affirmatively linked to the subordinate's conduct through record evidence, which could include evidence of "'supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.'" *Estate of Bennett v. Wainwright*, 548 F.3d 155, 176-77 (1st Cir. 2008) (quoting *Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008)); *Norton v. City of S. Portland*, 831 F. Supp. 2d 340, 365 (D. Me. 2011). The absence of an underlying constitutional deprivation precludes recovery on a supervisory liability claim. *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 – 82 (1st Cir. 1994) (explaining that to establish supervisory liability, the plaintiff must show an underlying constitutional violation). Because the summary judgment record includes no evidence to support a claim against the arresting officers, Plaintiff cannot prevail on his supervisory claim. [8]

---

Cir.1996) (entities that are integral part of town, such as police department, lack legal identity apart from town and therefore are not properly named as defendants in section 1983 suit).

[8] Defendant Gorham was a sergeant and could potentially be susceptible to a supervisory liability claim. However, the facts demonstrate that Defendant Gorham was directly involved in the arrest. Therefore, consideration of the supervisory liability standard is not required with respect to the claim against Defendant Gorham. In contrast, there is nothing in the record suggesting Defendant Sauschuck was a direct participant in the events giving rise to this action and therefore the claim against him necessarily requires that Plaintiff introduce evidence that satisfies the supervisory liability or municipal liability standard.

*2.    Failure to train*

A plaintiff can succeed on a claim based on the failure to train "[o]nly if the failure to train 'amounts to *deliberate indifference* to the rights of persons with whom the police come into contact,' and is 'closely related' to, or 'the moving force' behind, the constitutional injury . . . ." *Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998) (emphasis in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89, 391 (1989)). Deliberate indifference requires evidence that the defendants had active or constructive knowledge of a training deficiency that exposed the plaintiff to a substantial risk of deprivation of his constitutional rights, yet failed to act to prevent the deprivation. *Young v. City of Providence*, 404 F.3d 4, 28 (1st Cir. 2005). Knowledge of such risk can be demonstrated by evidence of a pattern of prior constitutional violations, or by "'a narrow range of circumstances'" in which a violation of a constitutional right is a "'highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Id.* (quoting *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). The absence of an underlying constitutional deprivation precludes recovery on a failure to train claim. *Kennedy v. Town Of Billerica*, 617 F.3d 520, 531 – 32 (1st Cir. 2010). Because the summary judgment record is devoid of any evidence to support a claim against the arresting officers, Plaintiff cannot prevail on his failure to train allegation.

*3.    Policy, custom, or practice*

Municipalities are liable for a constitutional deprivation caused by an employee, provided that the plaintiff demonstrates that the deprivation was the product of an official

policy, or "a custom or practice … so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayagűez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden,* 130 F.3d 26, 31 (1st Cir. 1997)). "The custom or practice must also be the cause and moving force behind the deprivation of constitutional rights." *Id.* at 24. The absence of an underlying constitutional deprivation precludes recovery on a policy, custom, or practice claim. *Kennedy*, 617 F.3d at 531 – 32. Because the summary judgment record lacks any evidence to support a claim against the arresting officers, Plaintiff cannot prevail on his policy, custom, or practice claim.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant the Portland Defendants' Motion for Summary Judgment (ECF No. 50), and enter judgment in their favor on all claims asserted against them.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of January, 2017.